MUSICK, PEELER & GARRETT LLP
LAWRENCE A. TABB (State Bar No. 141471)
*l.tabb@musickpeeler.com*
DANICA LAM (State Bar No. 266710)
*d.lam@musickpeeler.com*
333 South Hope Street
Suite 2900
Los Angeles, CA 90071
Telephone: 213.629.7797

CHOATE, HALL & STEWART LLP
Robert Kole *(pro hac vice)*
Caroline Trusty *(pro hac vice)*
rkole@choate.com
ctrusty@choate.com
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000

*Counsel for Plaintiffs and Counter Defendants*
*Liberty Mutual Fire Insurance Company*
*and Liberty Insurance Corporation*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>LX HAUSYS AMERICA, INC. (formerly known as LG Hausys America, Inc.),<br><br>Defendant. | Case No.: 2:25-cv-07207-CAS-KS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge: Hon. Christina A. Snyder<br>Magistrate Judge: Hon. Karen L. Stevenson<br><br>Date: March 23, 2026<br>Time: 10:00 a.m.<br>Place: Zoom |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS - CASE NO.: 2:25-CV-07207**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ..........................................................................................................2

    A.    The Policies' Silica Exclusions Bar Coverage for the Underlying Lawsuits. ....................................................................2

        1.    The Silica Exclusions' Plain Language Bars Coverage for Any Injuries Caused At Least In "Part" By Silica. ...............3

        2.    The Underlying Lawsuits Allege Injuries Caused At Least in Part by Silica. .........................................................6

        3.    LX Hausys Cannot Distinguish the Federal Case Law from this Circuit that Applies Similar Silica Exclusions to the Same or Similar Underlying Lawsuits. .........................................................9

    B.    The Policies' Pollution Exclusion Also Bars Coverage for the Underlying Lawsuits. ...................................................14

    C.    Leave to Amend Should be Denied. ...................................18

CONCLUSION.......................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24th & Hoffman Inv., LLC v. Northfield Ins. Co.*,
  82 Cal. App. 5th 825 (2022) ...................................................................................14

*Am. Cas. Co. of Reading, PA v. Miller*,
  159 Cal. App. 4th 501 (2008) ................................................................................17

*Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*,
  278 F. Supp. 3d 1025 (E.D. Tenn.) ........................................................................3

*Am. Zurich Ins. Co. v. James N. Gray Co.*,
  2014 U.S. Dist. LEXIS 186460 (C.D. Cal. July 25, 2014) ..........................13, 18

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*,
  45 Cal. App. 4th 1 (1996) .......................................................................................5

*Atain Specialty Ins. Co. v. Bay Stone Depot, Inc.*,
  No. 24-cv-07541, ECF 48 (N.D. Cal. May 19, 2025) ........................9, 10, 11, 13

*Brookfield Prop. Grp., LLC v. Liberty Mut. Fire Ins. Co.*,
  679 F. Supp. 3d 971 (C.D. Cal. 2023) ..................................................................11

*Burlington Ins. Co. v. NYC Transit Auth.*,
  29 N.Y.3d 313 (2017) .............................................................................................3

*City of Carlsbad v. Ins. Co. of State of Pa.*,
  180 Cal. App. 4th 176 (2009) .................................................................................6

*Evanston Ins. Co. v. Sandersville R.R.*,
  761 Fed. Appx. 940 (11th Cir. 2019) ...................................................................16

*Garamendi v. Golden Eagle Ins. Co.*,
  127 Cal. App. 4th 480 (2005) ....................................................................15, 16, 18

*Garvey v. State Farm Fire & Casualty Co.*,
  770 P.2d 704 (Cal. 1989) ......................................................................................12

*Gunderson v. Fire Ins. Exchange*,
  37 Cal. App. 4th 1106 (1995) .........................................................................11, 14

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS - CASE NO.: 2:25-CV-07207**

- ii -

*Haas v. Tavelex Ins. Servs.*,
  555 F. Supp. 3d 970 (C.D. Cal. 2021) ...................................................................19

*Hanover Am. Ins. Co. v. Francini, Inc.*,
  2025 U.S. Dist. LEXIS 70996 (C.D. Cal. Mar. 27, 2025) .................9, 10, 11, 13

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*,
  59 Cal. 4th 277 (2014) .........................................................................................14

*Hydro Sys., Inc. v. Continental Ins. Co.*,
  929 F.2d 472 (9th Cir. 1991) ...............................................................................16

*Julian v. Hartford Underwriters Ins. Co.*,
  35 Cal. 4th 747 (2005) ...........................................................................................6

*MacKinnon v. Truck Ins. Exch.*,
  31 Cal. 4th 635 (2003) .........................................................................................15

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*,
  132 Cal. App. 4th 1058 (2005) ...................................................................4, 14, 15

*Nat'l Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co.*,
  162 F.3d 821 (4th Cir. 1998) ...............................................................................16

*Nat'l Foam, Inc. v. Zurich Am. Ins. Co.*,
  768 F. Supp. 3d 1009 (N.D. Cal. 2025)...............................................................17

*Saarman Constr., Ltd. v. Ironshore Specialty Ins. Co.*,
  201 F. Supp. 3d 1136 (N.D. Cal. 2016), *withdrawn on
  reconsideration*, No. 15-cv-03548-JST, 2017 U.S. Dist. LEXIS
  13483 (N.D. Cal. Jan. 31, 2017)........................................................................8, 9

*Scott v. Cont'l Ins. Co.*,
  44 Cal. App. 4th 24 (1996) .....................................................................................4

*Scottsdale Ins. Co. v. MV Transp.*,
  36 Cal. 4th 643 (2005) ...............................................................................5, 11, 18

*Sompo Am. Ins. Co. v. LX Hausys Am., Inc.*,
  Case No. 2:25-cv-02832, ECF 47, Case No. 2:25-cv-02832, ECF
  47 (C.D. Cal. Dec. 22, 2025)........................................................................11, 12

*The Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co.*,
  198 Cal. App. 4th 522 (2011) ...............................................................................17

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEAD-
INGS - CASE NO.: 2:25-CV-07207**

*Titan Corp. v. Aetna Cas. & Sur. Co.*,
22 Cal. App. 4th 457 (1994) ......................................................................................6

*Vander Hamm v. Allstate Ins. Co.*,
286 F. Supp. 2d 790 (N.D. Tex. 2003) ...................................................................16

*Westoil Terminals Co. v. Indus. Indem. Co.*,
110 Cal. App. 4th 139 (2003) ................................................................................2, 9

**Other Authorities**

Merriam-Webster, https://www.merriam-webster.com/dictionary/in%20part (last visited March 2, 2026) ........................3

Merriam-Webster, https://www.merriam-webster.com/dictionary/partially (last visited March 2, 2026) ...........................3

## PRELIMINARY STATEMENT

To claim coverage for the Underlying Lawsuits, LX Hausys applies its own made-up standard, rather than the unambiguous language of the Silica Exclusions.[1]

In its Opposition, LX Hausys contends that there is coverage for the Underlying Lawsuits because those Lawsuits allege non-silica related injuries, and the Silica Exclusions apply only to injuries "***solely*** caused by silica." Opp. at 9 (emphasis added). This "solely caused by silica" standard, invented by LX Hausys, misstates the policies, mischaracterizes the Underlying Lawsuits, and relies on multiple misrepresentations of this Circuit's case law. While LX Hausys purports to rely on the Policies' plain language, LX Hausys never interprets, examines, or defines the Silica Exclusions' key phrases, including "any part of which" or "in whole or in part." Indeed, the phrase "any part of which" appears a total of *one time* in LX Hausys' Opposition. The similar five-word phrase, "in whole or in part," is not mentioned *at all*. As a matter of black-letter California law, every word in a contract must be given meaning, and this key language cannot be excised simply because it defeats LX Hausys' preferred result.

To be clear, the Silica Exclusions are *not* limited to injuries "solely caused by silica." Rather, as noted above, the Silica Exclusions expressly exclude coverage for: injuries "***any part of which***" are allegedly caused by silica; or injuries arising "***in whole or in part***" out of the alleged inhalation or ingestion of silica. To be sure, the Underlying Lawsuits allege injuries caused primarily by silica *and also* other substances. But the Silica Exclusions still apply because the Underlying Lawsuits allege that *all* of the underlying plaintiffs' injuries were caused at least in *part* by silica, even if those injuries were *also* caused in part by other substances. LX

[1] Capitalized terms have the same meaning as set forth in Liberty's Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Judgment on the Pleadings. ECF No. 31-14.

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS - CASE NO.: 2:25-CV-07207**

Hausys' contrary claim—that the Underlying Lawsuits allege injuries caused by certain substances and "not silica"—is simply untrue. In fact, the Underlying Lawsuits expressly allege that silica was a "substantial factor" in *every single injury* suffered by the underlying plaintiffs. Accordingly, two federal courts from this Circuit have already ruled that similar silica exclusions bar coverage for similar underlying lawsuits, rejecting the same argument that LX Hausys asserts here. LX Hausys avoids the Policies' plain language, the Underlying Lawsuits' actual allegations, and what the case law truly says, because they are all fatal to LX Hausys' claim for coverage.

But, even under LX Hausys' invented standard for coverage under the Silica Exclusions, any injuries allegedly caused by silica and other substances would still be excluded from coverage under the Policies' total pollution exclusion. While LX Hausys contends that silica is not a pollutant, it does *not* dispute that (a) the Silica Exclusions bar any silica-related injuries, and (b) the other substances in the Underlying Lawsuits—substances like styrene, anhydride, benzene, ethylbenzene and toluene—*are* federally regulated and recognized as traditional pollutants. Under California precedent, which LX Hausys fails to distinguish, such traditional pollutants dispersed through industrial—not residential—operations are properly excluded from coverage under the total pollution exclusion. Thus, even if the Silica Exclusions alone did not bar LX Hausys' claims for coverage (which they do), the combination of the Silica Exclusions and total pollution exclusion undoubtedly exclude coverage for the Underlying Lawsuits.

Liberty's Motion should be granted.

## ARGUMENT

### A. The Policies' Silica Exclusions Bar Coverage for the Underlying Lawsuits.

LX Hausys does not dispute that where a policy "exclusion is clear and unambiguous, it is given its literal effect." *See* Mot. at 8 (quoting *Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal. App. 4th 139, 146 (2003)). LX Hausys also

concedes that the Silica Exclusions are unambiguous.  *See* Opp. at 8 (describing the Silica Exclusions as "plain").  Further, LX Hausys admits that the Underlying Lawsuits all allege silica-related injuries.  *See* Opp. at 1.

Yet, LX Hausys refuses to recognize that the Silica Exclusions' plain language, given its literal effect, bars coverage for the Underlying Lawsuits.  *See* Mot. at 9-11.  Instead, LX Hausys argues that coverage exists, while misstating the Policies' plain terms, mischaracterizing the Underlying Lawsuits, and misrepresenting the relevant case law.  As set forth below, LX Hausys' arguments fail, and Liberty's Motion should be granted.

### 1.    The Silica Exclusions' Plain Language Bars Coverage for Any Injuries Caused At Least In "Part" By Silica.

*First*, although LX Hausys purports to begin with the "plain language of the Silica Exclusion" (Opp. at 8), it proceeds to misstate that language badly.  It contends that the Silica Exclusions "appl[y] only" to "injuries that were ***solely*** caused by silica."  Opp. at 9 (emphasis added).  That assertion ignores that the Silica Exclusions expressly bar coverage for injuries "***any part*** of which" are caused by silica, or injuries "arising, ***in whole or in part***, out of the inhalation or ingestion" of silica.  Mot. at 9 (emphasis added).  Those key phrases *cannot* mean "solely caused by."  *See Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 322 (2017) ("[T]he phrases '***caused, in whole or in part, by***' and '***solely caused b***y' ***are not synonymous***, either by their plain meaning or legal effect.") (emphasis added).  Rather, in "part" unambiguously means "partially," "in some degree," or "to some extent."[2]  Thus, if the

---

[2] *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/in%20part (last visited March 2, 2026) (defining "in part" to mean "in some degree" or "partially").  *See also* Merriam-Webster, https://www.merriam-webster.com/dictionary/partially (last visited March 2, 2026) (defining "partially" to mean "to some extent" or "in some degree").  *See also Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1041 (E.D. Tenn.) ("[T]he phrase 'caused, in whole

Underlying Lawsuits allege injuries caused by or arising out of silica even "partially," "in some degree," or "to some extent," alongside other substances, the Silica Exclusions *still* bar coverage. *See, e.g.*, *Quiroz* TAC ¶112 ("As a direct and proximate result of his exposure to silica, metals, *and* other toxins… [Plaintiff] developed lung disease.") (emphasis added). Stated differently, if a complaint alleges injuries caused by silica *and also* another substance, those injuries were caused "in part" by silica and are therefore excluded under the plain language of the Silica Exclusions. Because, as LX Hausys concedes, the Underlying Lawsuits allege injuries caused by silica *and also* other substances—the Silica Exclusions apply. *See, e.g.*, Opp. at 6 ("LX Hausys is defending itself against claims asserted in hundreds of lawsuits seeking to hold it liable *not only* for silicosis . . . *but also* for a host of other bodily injuries . . .") (emphasis added).

LX Hausys claims that this interpretation is "not [] reasonable," Opp. at 8, but it fails to identify how else the phrases "any part of which" or "in whole or in part"—phrases LX Hausys declines to acknowledge—could be defined, beyond their plain, ordinary, dictionary definitions. *Scott v. Cont'l Ins. Co.,* 44 Cal. App. 4th 24, 28-29 (1996) ("Words in an insurance policy, unless given special meanings by the policy itself, must be understood in their ordinary sense.").[3] LX Hausys' interpretation of the Silica Exclusion would render the phrases "in whole or in part" or "any part of which" meaningless, which California law does not permit. *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1072 (2005) ("It is a very fundamental principle that policy language be so construed as to give effect to every term."); *id.* at 1073 ("[A]n interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless.").

---

or in part,' is not ambiguous. [I]t assigned additional insured status if the accident was caused by [the insured] in ***some way, even partially***.") (emphasis added).

[3] *See also id.* ("[I]n seeking to ascertain the ordinary sense of words, courts in insurance cases regularly turn to general dictionaries.").

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS - CASE NO.: 2:25-CV-07207**

- 4 -

LX Hausys also argues that the Silica Exclusions cannot apply without "extensive medical evidence," Opp. at 9, but this argument both misstates the Policies and the duty to defend.  The Silica Exclusions bar coverage for injury "any part of which is . . .*allegedly* caused by [] silica," and accordingly, if the Underlying Lawsuit alleges that an injury was caused in part by silica, then the Silica Exclusions apply, without any "extensive medical evidence" or "fact intensive inquiries."  *See* Mot. at 3; *id.* ("This insurance does not apply to . . . bodily injury arising in whole or in part out of the actual [or] *alleged* . . . inhalation or ingestion of silica.").  This is consistent with the duty to defend under California law, which turns on "a comparison between the *allegations* of the complaint and the terms of the policy."  *Scottsdale Ins. Co. v. MV Transp.,* 36 Cal. 4th 643, 654-55 (2005) (emphasis added).  LX Hausys also has no support for its theory that the duty to defend requires evidence of each injury "at the cellular level."  *See* Opp. at 9.  LX Hausys cites *Armstrong*, but *Armstrong* is a trigger and allocation case.  *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.,* 45 Cal. App. 4th 1, 45-46 (1996).[4]  Nowhere does that decision address, let alone hold, that that "cellular changes" are a proper basis for determining whether a claimants' injuries are excluded from coverage under the duty to defend.

A simple example highlights the flaw in LX Hausys' argument.  Assume a complaint where the claimant alleges he was exposed to silica and suffered silicosis as a result.  Even LX Hausys would have to admit that the Silica Exclusions would eliminate the duty to defend that complaint, without "medical evidence" regarding the details of "cellular" injury, because the plain language of the Silica Exclusions and the allegations of the complaint mandate that result.  That analysis leads to the same result here: because the Underlying Lawsuits plainly and unambiguously

---

[4] The insured in *Armstrong* argued that coverage was triggered from the moment underlying claimants were exposed to asbestos because "bodily injury" under the policy occurred as soon as "subclinical cellular changes" were initiated by exposure. 45 Cal. App. 4th at 45-46.

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS - CASE NO.: 2:25-CV-07207**

- 5 -

allege injury caused at least in "part" by exposure to silica, no other evidence, medical or otherwise, is needed to reach that conclusion.

Finally, LX Hausys' argument that the Silica Exclusions' in "part" language is "unenforceable" under the "efficient proximate cause doctrine" has no merit. Opp. at 10. Under California law, the efficient proximate cause doctrine only applies to first-party insurance, not third-party insurance like the Policies. *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 750 (2005) (stating "the efficient proximate cause doctrine [is] an interpretive rule for first party insurance"); *City of Carlsbad v. Ins. Co. of State of Pa.*, 180 Cal. App. 4th 176, 183 (2009) ("[T]he efficient proximate cause doctrine is limited to first party cases, *i.e.*, where an insured seeks coverage for damages to his or her own property interests."). Accordingly, that doctrine is inapplicable here.

In sum, the only reasonable interpretation of the Silica Exclusions is that they apply to any injury allegedly arising out of or caused at least in part by silica. *See* Mot. at 9. *See also Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal. App. 4th 457, 469 (1994) (where policy language is not "reasonably susceptible to more than one interpretation" it is unambiguous and courts "will not indulge tortured constructions . . . in order to find coverage"). Because the Underlying Lawsuits allege injuries caused at least in part by silica, they are barred from coverage by the Silica Exclusions. *See* Mot. at 9-11.

**2.    The Underlying Lawsuits Allege Injuries Caused At Least in Part by Silica.**

*Second*, LX Hausys mischaracterizes the Underlying Lawsuits. LX Hausys asserts that the Underlying Lawsuits allege some injuries "caused by many substances *other than* 'silica'" or "*not* silica." Opp. at 8, 13. But LX Hausys does not identify a *single* allegation from the Underlying Lawsuits that supports this claim.

---

Specifically, from the *Quiroz* Complaint[5], LX Hausys cites paragraphs 95, 97, 98, 112, and 1306 as purported examples of the *Quiroz* Plaintiff's injuries being caused by substances "other than" or "not silica."  *See* Opp. at 8, 13.  Each of those paragraphs, however, describes injuries that the *Quiroz* Complaint alleges were caused at least in part by silica.  For example:

- Paragraph 95 alleges that fabrication can cause "chronic silicosis as well as lung cancer and various silica-related diseases." *Quiroz* TAC ¶95. The *Quiroz* Plaintiff also expressly alleges that those injuries were caused in part by silica.  *See Quiroz* TAC ¶112 ("As a direct and proximate result of his exposure to silica, metals and other toxins . . . Plaintiff [] developed [] silicosis [and] silica-related diseases such as lung cancer.").

- Paragraph 97 alleges that "*in addition to crystalline silica*, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals . . ." *Quiroz* TAC ¶97 (emphasis added).  The *Quiroz* Plaintiff also expressly alleges that silica caused his pulmonary fibrosis.  *See Quiroz* TAC ¶112 ("As a direct and proximate result of his exposure to silica, metals and other toxins . . . Plaintiff [] developed pulmonary fibrosis.").

- Paragraph 98 alleges forms of lung damage that can be caused by volatile organic compounds, including "asthma, bronchiolitis obliterans [and] decreased lung function…" *Quiroz* TAC ¶98.  The *Quiroz* Plaintiff also expressly alleges that silica caused his "forms of lung damage." *See Quiroz* TAC ¶112 ("As a direct and proximate cause of his exposure to silica . . . Plaintiff [] developed . . . forms of lung damage[.]").

- Paragraph 112 alleges multiple injuries. *Quiroz* TAC ¶112.  The *Quiroz* Plaintiff also expressly alleges that each one was caused, at least in part, by silica.  *See Quiroz* TAC ¶112 ("**As a direct and proximate cause of his exposure to silica**, metals and other toxins . . . **Plaintiff [] developed** lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage and therefore has a significantly increased risk of developing ***other silica-related diseases*** such as lung cancer, chronic kidney disease, and

[5] LX Hausys admits that the *Quiroz* Complaint contains "allegations [that] are substantially similar to those in the [Underlying] Lawsuits."  Opp. at 2, n. 1.

autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis[].") (emphasis added).

- Paragraph 1306 alleges that Plaintiff suffered "silicosis, pulmonary fibrosis, and related medical conditions." *Quiroz* TAC ¶1306. The *Quiroz* Plaintiff also expressly alleges that these injuries were caused by silica. *See Quiroz* TAC ¶1306 ("As a direct result of Plaintiff[]'s exposure to . . . silica, metals and other toxins . . . Plaintiff suffer[ed] from specific illnesses, to wit, silicosis, pulmonary fibrosis, and related medical conditions[.]").

In short, every injury alleged in the *Quiroz* Complaint was allegedly caused at least in part by silica. *See, e.g.*, *Quiroz* TAC ¶1306-07 ("exposure to . . . silica, metals *and* other toxins . . .were substantial factors in causing, prolonging, and aggravating his silicosis and his related and consequential injuries"). LX Hausys argues that Liberty must defend any "potentially covered claims," Opp. at 6-7, but the Underlying Lawsuits are not "mixed actions" of "covered claims" and "uncovered claims." For this reason, LX Hausys' citation to *Saarman*—a mixed action case—is unavailing. *Saarman Constr., Ltd. v. Ironshore Specialty Ins. Co.*, 201 F. Supp. 3d 1136, 1147-49 (N.D. Cal. 2016), *withdrawn on reconsideration*, No. 15-cv-03548-JST, 2017 U.S. Dist. LEXIS 13483 (N.D. Cal. Jan. 31, 2017). While the policies in *Saarman* excluded any "suit" arising out of "mold," the underlying complaints alleged damages caused by "mold" *and other* damages from "water intrusion and water damage, *separate and apart from the mold damage*." *Id*. (emphasis added). Thus, the insurer had a duty to defend both the "uncovered" mold claims and the "potentially covered" and "separate" water damage claims, and it could not "contract around" that duty. *Id.* By contrast, here, the Underlying Lawsuits are not "mixed" between "silica-related claims" and "non-silica-related claims," because all the underlying plaintiffs' claims and injuries are inextricably linked; there are no alleged injuries caused separate and apart from plaintiffs' alleged exposure to silica. *See, e.g.*, *Quiroz* TAC ¶1308 ("As a direct and proximate result of Defendants'

negligence as alleged herein, Plaintiff . . . suffers from silicosis and *related* injuries.") (emphasis added).  The Underlying Lawsuits only allege injuries caused by or arising out of at least in part silica, and accordingly, every single injury is a silica-related injury barred from coverage by the Silica Exclusions.  *See supra* pp. 7-8. Nothing under California law prohibits this Court from giving the Silica Exclusions' their literal effect as applied to the Underlying Lawsuits.  *Westoil Terminals*, 110 Cal. App. 4th at 146.

### 3. LX Hausys Cannot Distinguish the Federal Case Law from this Circuit that Applies Similar Silica Exclusions to the Same or Similar Underlying Lawsuits.

*Third*, and finally, LX Hausys misrepresents the case law from this Circuit, where two courts applied silica exclusions to some of the same underlying lawsuits asserted against LX Hausys.  *See, e.g., Hanover Am. Ins. Co. v. Francini, Inc.*, 2025 U.S. Dist. LEXIS 70996, at \*13-14 (C.D. Cal. Mar. 27, 2025) ("*Francini*"); *Atain Specialty Ins. Co. v. Bay Stone Depot, Inc.*, No. 24-cv-07541, ECF 48, at 11 (N.D. Cal. May 19, 2025) ("*Bay Stone*").  As an initial matter, LX Hausys claims that the *Bay Stone* decision is not a "reliable precedent" because "the court[] granted the insured[] leave to amend  . . . and upon the insurers' renewed motion[], the court denied the motion [.]".  Opp. at 11.  This claim is, at best, misleading.  In fact, the *Bay Stone* court:  denied a duty to defend based on the silica exclusion; granted the insured leave to amend; and denied the insurers' renewed motion—but that denial was *not at all* related to the silica exclusion.  *See Bay Stone*, ECF No. 48, at 3.  That decision expressly *only* concerned the insured's newly plead affirmative defenses, and accordingly, the *Bay Stone* court's application of the silica exclusion to the underlying lawsuits remains good law and "reliable precedent."[6]

---

[6] *See id.* ("[T]he court will only consider these defenses [bad faith, mutual mistake, unilateral mistake, unconscionability, declaratory relief improper, and violation of Cal. Ins. Code § 790.03] in its analysis. . . .  If any one of Bay Stone's affirmative

LX Hausys also cannot distinguish the outcome in *Francini* or *Bay Stone* from the necessary outcome in this case. *See* Mot. at 11. LX Hausys does not contend that either case was wrongly decided. Instead, LX Hausys asserts that *Francini* and *Bay Stone* are different because they concerned underlying lawsuits where "recovery sought against [those insureds was solely] based on bodily injuries, sickness, or disease caused by [] silica or silica-related dust." Opp. at 11. That is wrong. The underlying lawsuits at issue in both *Francini* and *Bay Stone*—like the Underlying Lawsuits here—all alleged injuries caused in large part by silica, but also in part by other substances. *Francini*, 2025 U.S. Dist. LEXIS 70996, at *10, 13-14 (recognizing that "the underlying state actions involve allegations that other harmful chemicals, not just silica, caused underlying plaintiffs' injuries"); *Bay Stone,* ECF No. 48, at 3 (recognizing that the underlying complaint included allegations that the plaintiff was "exposed to and inhaled stone dust containing silica and other toxins and carcinogens").[7] Both the *Francini* and *Bay Stone* courts thus considered and rejected the insured's argument that the presence of other substances in the underlying lawsuits precluded the application of the silica exclusion. *See id.*; *Francini,* 2025 U.S. Dist. LEXIS 70996, at *3; *Bay Stone*, ECF No. 48, at 2-3. LX Hausys makes that same argument in this case, and this Court should similarly reject it.

LX Hausys' attempt to rehabilitate and rely on the federal district court decision in *Sompo* also fails. *See* Opp. at 12-14. When the *Sompo* court declined to apply the silica exclusions to the underlying lawsuits in that case, it relied on LX

---

defenses raises factual issues, then Atain's motion for judgment on the pleadings should be denied.").

[7] In fact, the underlying lawsuits at issue in *Francini* and *Bay Stone* are some of the exact same Underlying Lawsuits at issue against LX Hausys. For example, the *Francini* court examined the *Estrella-Moreo* Complaint, and the *Bay Stone* court examined the *Lopez* Complaint, both of which are Underlying Lawsuits for which LX Hausys seeks coverage from Liberty in this case. *See* RJN Exs. 2 ("*Estrella-Moreno* Complaint"), 17 ("*Lopez* Complaint").

Hausys' claim that its HIMACS product contains no silica. *See Sompo Am. Ins. Co. v. LX Hausys Am., Inc.*, Case No. 2:25-cv-02832, ECF 47 at 4, (C.D. Cal. Dec. 22, 2025) ("*Sompo*") ("[The silica exclusion] does not bar coverage for the bodily injuries that the underlying plaintiffs allege were caused by exposure to products that do not contain silica such as LX Hausys' HIMACS product"). As Liberty explained in its Motion, however, LX Hausys' claim that HIMACS contains no silica directly contradicts the *Quiroz* Complaint, which expressly identifies HIMACS as a stone product containing silica, and *never* alleges that HIMACS does *not* contain silica. *Quiroz* TAC ¶¶93, 105. LX Hausys argues that the *Sompo* court was "required to accept [LX Hausys' HIMACS] allegations as true." Opp. at 12. But for purposes of the duty to defend (and under the Silica Exclusions), the relevant allegations are the underlying plaintiff's allegations, even if the insured believes the plaintiff's allegations are false. *See Scottsdale*, 36 Cal. 4th at 657 ("We have made clear that where the *third party suit* never presented any potential for policy coverage, the duty to defend does not arise in the first instance, and the insurer may properly deny a defense.") (emphasis added). *See also Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability[.]").[8]

LX Hausys similarly endorses the *Sompo* court's misapplication of the "independent concurrent causation" doctrine. *See Sompo*, ECF 47, at 4-5. Although the

---

[8] This Court also does not have to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Brookfield Prop. Grp., LLC v. Liberty Mut. Fire Ins. Co.*, 679 F. Supp. 3d 971, 976 (C.D. Cal. 2023). The Underlying Lawsuits are all available to this Court through the Request for Judicial Notice, *see* ECF No. 32, and those Complaints plainly allege—in contrast to LX Hausys' claim—that HIMACS contains silica. *See, e.g.*, RJN Exs. 17 (*Lopez* Complaint) ¶¶54, 66 (alleging that "all stone products contain crystalline silica" and identifying "HIMACS" as one of "the named Defendants' stone products at issue in this case"); 2 (*Estrella-Moreno* Complaint) ¶¶45, 47 (same).

*Sompo* court relied on that doctrine to find coverage for the underlying lawsuits, that doctrine does not apply because the lawsuits do not allege "concurrent causes, each originating from an independent act of negligence [that] simultaneously join together to produce an injury." *See* Mot. at 15 (citing *Garvey v. State Farm Fire & Casualty Co.*, 770 P.2d 704, 705 (Cal. 1989)). LX Hausys does not dispute that the doctrine requires "concurrent [and] independent acts of negligence," but it insists that the *Quiroz* Complaint alleges injuries "caused by standalone exposures to silica" and other "lung damage independently caused by exposure to VOCs." Opp. at 13. But no such "standalone" or "independently caused" allegations exist, nor does LX Hausys identify any.[9] To the contrary, the *Quiroz* Complaint alleges that "stone products" are comprised of a mix of toxins, which are released through the fabrication process, and which "always" contain silica, among other substances, thereby causing injury to fabrication workers. *Quiroz* TAC ¶93 ("All stone products contain crystalline silica in varying concentrations"), ¶261 ("[W]orkers who fabricate stone *are* always exposed to crystalline silica dust"), ¶96 ("Fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are *not only exposed to high concentrations of respirable crystalline silica*, but are also exposed to other toxic substances in artificial stone") (emphasis added). The *Quiroz* Complaint never alleges that VOCs, metals or gases cause "standalone exposures" or are released "independently" from silica in that process. To the contrary, it affirmatively alleges the exact opposite. *See Quiroz* TAC ¶¶93, 96, 261. Accordingly, the independent concurrent causation doctrine does not apply. *See* Mot. 15-17.

Finally, the federal district court decision in *Gray* does not advance LX Hausys' argument, as that case dealt with minimal silica references. *See Am. Zurich*

---

[9] Again, LX Hausys cites Paragraphs 97, 112, and 1306, but as explained above, those paragraphs all allege injuries that the Plaintiff alleges were caused, at least in part, by silica, not independent or "standalone exposures" to other substances. *See supra* pp. 7-8.

*Ins. Co. v. James N. Gray Co.*, 2014 U.S. Dist. LEXIS 186460 (C.D. Cal. July 25, 2014) ("*Gray*"). In *Gray*, the underlying plaintiffs were exposed to "significant concentrations" of dozens of non-silica chemicals, including "aromatic solvents, aliphatic solvents, naphthenic solvents, chlorinated solvents, other organic solvents" and other toxins from nearby demolition work. *See Gray,* 2014 U.S. Dist. LEXIS 186460, at *2-3, *13. The underlying plaintiffs' primary injury was Systemic Vasculitis and its "related and consequential medical conditions." *See id.* at *3. *See also Francini,* 2025 U.S. Dist. LEXIS 70996, at *11-12 ("Unlike in [*Gray*] the primary injuries alleged in the [Silica Lawsuits] are silicosis (which is caused by silica inhalation) and resulting complications from that lung disease."). *See also Bay Stone*, ECF No. 48, at 10-11 ("Here, the Court finds the instant action comparable to [*Francini*], not [*Gray*]" as "[t]he primary injuries alleged in the [underlying lawsuit] are silicosis (caused by silica inhalation) and resulting complications from that disease."). Thus, while *Gray* was arguably wrongly decided, *see* Mot. at 12-13, even if it was correct, a genuine question existed in *Gray* as to whether the plaintiff's injuries were caused even in part by silica. *See Gray,* 2014 U.S. Dist. LEXIS 186460, at *3 ("The Molina plaintiffs alleged 'they were inhalationally and dermally exposed' to toxic chemical products 'contain[ing] significant concentrations of aromatic solvents, aliphatic solvents, naphthenic solvents, chlorinated solvents, other organic solvents, silica, and other toxic chemicals' while doing their jobs.").

Not so here. The Underlying Lawsuits are almost entirely about silica, and there can be no legitimate question that the injuries are alleged to have been caused at least in part by silica. The *Quiroz* Complaint alone: references the terms "silica" and "silicosis" over two thousand times; devotes dozens of paragraphs to set forth a "Brief History of Silicosis" and "The New Artificial Stone Silicosis Epidemic"; describes each Defendants' decades of knowledge about the "silicosis hazard"; and repeatedly refers to all the *Quiroz* Plaintiff's injuries as "silicosis and his *related* and consequential injuries." *See Quiroz* TAC ¶1325 (emphasis added); *see also* ¶¶697,

1323-26, 1340, 1378-79, 1307("[Plaintiff]'s silicosis and his related and consequential injuries"); *see also Quiroz* TAC ¶112 (referring to "lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage . . . lung cancer, chronic kidney disease" as "silica-related diseases").  The Underlying Lawsuits are about silica, they unquestionably allege injuries caused at least in "part" by silica, and the Silica Exclusions bar coverage for them.

* * *

Ultimately, "while the duty to defend is broad, it is not unlimited." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014) (internal quotations omitted).  Liberty "has the right to limit the coverage of a policy issued by it[,] and the plain language of that limitation must be respected."  *Gunderson,* 37 Cal. App. 4th at 1118.

LX Hausys' Opposition essentially asks this Court to rewrite the Silica Exclusion so that it applies only to injuries "solely caused by" silica.  But courts "do not rewrite any provision of any contract, including an insurance contract, for any purpose." *24th & Hoffman Inv., LLC v. Northfield Ins. Co.,* 82 Cal. App. 5th 825, 833 (2022).  Adopting LX Hausys' interpretation of the Silica Exclusions would require this Court to render the phrases "any part of which" and "in whole or in part" meaningless.  California law prohibits such a result.  *Mirpad*, 132 Cal. App. 4th at 1072 ("It is a very fundamental principle that policy language be so construed as to give effect to every term."); *id.* ("[A]n interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless.").

Under their plain terms, the Silica Exclusions bar coverage for the Underlying Lawsuits because those Lawsuits allege injuries caused at least in "part" by silica. Liberty's Motion should, therefore, be granted.

B.   **The Policies' Pollution Exclusion Also Bars Coverage for the Underlying Lawsuits.**

In its effort to avoid the Silica Exclusions, LX Hausys runs straight into the total pollution exclusion. *See* Mot. at 17-20. The Silica Exclusions bar coverage for all the injuries alleged in the Underlying Lawsuits. *See, e.g.*, *supra* pp. 3-15; Mot at 9-11. But even if the Silica Exclusions were limited solely to silica-only injuries, all the Underlying Lawsuits' remaining alleged injuries would still be barred from coverage by the total pollution exclusion, and accordingly, there remains no duty to defend. *See* Mot. at 17-20.

LX Hausys does not dispute that the total pollution exclusion applies to "irritants and contaminants commonly thought of as pollution." *See* Mot. at 18 (citing *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 485 (2005)); Opp. at 15 (asserting the total pollution exclusion applies to "traditional environmental pollution"). While LX Hausys argues that silica is not a pollutant, it also does not dispute that the volatile organic compounds, metals and gases at issue in the Underlying Lawsuits *are* "traditional environmental pollutant[s]." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003). Indeed, LX Hausys argues that silica cannot be a pollutant because it is not regulated by the Clean Air Act or the Clean Water Act. Opp. at 15-16. But LX Hausys does not dispute (nor could it) that the other substances—substances including styrene, phthalic anhydride, benzene, ethylbenzene, toluene, chromium, copper, iron, manganese, and volatile organic compounds—*are* regulated as "pollutants" under the Clean Air Act. *See* Mot. at 19, n. 18. Moreover, courts routinely find that injuries caused by the dispersal of these substances into the air are barred from coverage under the total pollution exclusion. *See, e.g.*, *Vander Hamm v. Allstate Ins. Co.,* 286 F. Supp. 2d 790, 794-96 (N.D. Tex. 2003) (applying pollution exclusion to toluene and other VOC fumes that migrated from a bathroom remodel into an office suite); *Hydro Sys., Inc. v. Continental Ins. Co.*, 929 F.2d 472, 476-77 (9th Cir. 1991) (barring coverage for styrene gas released from a fiberglass-manufacturing facility); *Evanston Ins. Co. v. Sandersville R.R.*, 761 Fed. Appx. 940, 941, 943 (11th Cir. 2019) (finding the policy's pollution exclusion barred

coverage for injuries "caused by occupational exposure to welding fumes containing iron"); *Nat'l Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co.*, 162 F.3d 821, 824-25 (4th Cir. 1998) (excluding coverage for injuries caused by "fumes, particulates and gases containing manganese" during the manufacture of electrical engineering products where the policy exclusion bars coverage for claims arising from "the creation of an injurious condition involving any Pollutant").  Thus, at the very least, the total pollution exclusion applies to and bars coverage for any injuries alleged in the Underlying Lawsuits caused by volatile organic compounds, gases or metals, which are the only substances other than silica that are alleged to have contributed to plaintiffs' injuries.  *See* Mot. at 17-19.[10]

LX Hausys' contrary arguments fail.  Specifically, LX Hausys claims that the exposures in the Underlying Lawsuits are not pollution because they happened in "confined workspaces like residential kitchens and bathrooms." Opp. at 16-17.  This is incorrect.  As the paragraphs LX Hausys itself cites make clear, the *Quiroz* Complaint alleges that the exposures causing the Plaintiff's injuries all happened in "fabrication shops," *i.e.*, commercial locations—*not* "residential kitchens and bathrooms." *Quiroz* TAC ¶¶106-110.

Further, LX Hausys argues that the total pollution exclusion cannot apply to the Underlying Lawsuits because it cannot apply to "harm by exposure to the insured's products." Opp. at 16.  But the federal case that LX Hausys cites for this assertion confirms the opposite under California law.  *See* Opp. at 16 (citing *Nat'l Foam, Inc. v. Zurich Am. Ins. Co.*, 768 F. Supp. 3d 1009, 1020 (N.D. Cal. 2025))

---

[10] As explained in Liberty's Motion, California law confirms that silica is a pollutant, and injuries caused by the dispersal of silica through industrial operations are barred from coverage under the total pollution exclusion.  *See* Mot. at 18-19 (citing *Garamendi*, 127 Cal. App. 4th at 486).  But regardless, LX Hausys does not dispute that injuries caused by silica are barred by the Silica Exclusions.

("[The insured] cites *Mackinnon* for the proposition that all harms arising from regular use of a product are not pollution.  The holding was not so broad.").[11]

Finally, LX Hausys argues that the exposures alleged in the Underlying Lawsuit were not "widespread" enough to constitute traditional pollution.  Opp. at 17.  But California law confirms that the total pollution exclusion does not require "wholesale environmental degradation" and can apply to an event whether or not the pollution was widespread.  *See, e.g.*, *The Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co.*, 198 Cal. App. 4th 522, 539-42 (2011) ("the release of asbestos fibers into the air" in a single condominium building, whether or not "widely dispersed," "constituted environmental pollution within the meaning of the pollution exclusion"); *Am. Cas. Co. of Reading, PA v. Miller*, 159 Cal. App. 4th 501, 516 (2008) (prevention of widespread contamination beyond immediate area is "not determinative" of whether the event is "commonly thought of as environmental pollution").

Here, the *Quiroz* Complaint alleges injuries caused by the release of federally regulated pollutants through "industrial" operations.  *See Quiroz* TAC ¶¶89, 421, 422, 533.  Toxic substances, regulated as pollutants by the federal government, were allegedly released into the air through the fabrication process—cutting, grinding, drilling, chipping, edging and polishing stone products.  *See Quiroz* TAC ¶95.  Under California law, such injuries are barred from coverage under the total pollution exclusion.  *See Garamendi*, 127 Cal. App. 4th at 485-86.  Thus, even if the underlying plaintiffs' exposure to toxic substances *in addition to* silica fell outside

---

[11] *See also Nat'l Foam*, 768 F. Supp. 3d at 1020 (holding that the "harm [at issue], while ultimately traceable to the [claimant's] use of [the insured's] product, is still fairly characterized as pollution").

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS - CASE NO.: 2:25-CV-07207**

- 17 -

the scope of the Silica Exclusions (which it plainly does not), it is still excluded by the total pollution exclusion.[12]

### C. Leave to Amend Should be Denied.

LX Hausys does not dispute that if the Silica Exclusions and the total pollution exclusion apply, all its counterclaims must be dismissed. *See* Mot. at 20-21. LX Hausys argues, however, that if its counterclaims are dismissed, it should be granted leave to amend to "plead in clearer terms the underlying plaintiffs' allegations of injury caused by non-excluded substances and localized exposures falling outside the scope of the Policies' Pollution exclusion." Opp. at 19. But the duty to defend does not depend upon how "clear" LX Hausys' counterclaims are plead. Rather, the duty to defend relies on a comparison between the allegations in the Underlying Lawsuits and the policies' plain terms. *See Scottsdale*, 36 Cal. 4th at 654-55. All that material is available to the parties and properly before this Court in Liberty's Motion. *See* Request for Judicial Notice, ECF No. 32. None of that material can or will change through any amendment by LX Hausys. The reason LX Hausys cannot identify a single allegation supporting its claim for coverage in the hundreds of Underlying Lawsuits is because the Silica Exclusions and the total pollution exclusion unambiguously bar coverage for those Lawsuits. There is, therefore, no set of facts "consistent with the [] pleading[s]" under which this Court could find

---

[12] LX Hausys cites *Gray* for the proposition that the total pollution exclusion cannot apply to pollution in "confined" spaces, *see* Opp. at 16, 17, but *Gray* is easily distinguishable. The exposures in *Gray* were confined to and caused by work at one demolition site. *Gray,* 2014 U.S. Dist. LEXIS 186460, at *2 ("ICEB and other defendants were contractors doing demolition and construction work at the Boeing facility where the plaintiffs worked."). Dissimilarly here, the *Quiroz* Complaint alleges that the Plaintiff suffered toxic exposures for over a decade, in multiple commercial locations and from dozens of products sold by almost every manufacturer, distributor and supplier of architectural stone and tile in California. *Quiroz* TAC ¶¶106-111.

coverage here, and leave to amend should be denied.  *Haas v. Tavelex Ins. Servs.*, 555 F. Supp. 3d 970, 975 (C.D. Cal. 2021).

## CONCLUSION

The Policies' Silica Exclusions and total pollution exclusion bar coverage for the injuries alleged in the Underlying Lawsuits.  Nothing in LX Hausys' Opposition overcomes that conclusion.  Accordingly, for the foregoing reasons and the reasons stated in Liberty's Motion, Liberty's Motion should be granted, and LX Hausys' counterclaims should be dismissed without leave to amend.

Dated: March 9, 2026                    Respectfully submitted,


                                        /s/ Lawrence A. Tabb
                                          Lawrence A. Tabb
                                          *l.tabb@musickpeeler.com*
                                          Danica Lam
                                          *d.lam@musickpeeler.com*
                                          333 South Hope Street
                                          Suite 2900
                                          Los Angeles, CA 90071
                                          Telephone: 213.629.7797


                                                  – and –


                                        CHOATE, HALL & STEWART LLP
                                        Robert Kole *(pro hac vice)*
                                        Caroline Trusty *(pro hac vice)*
                                        Two International Place
                                        Boston, Massachusetts 02110
                                        Telephone: (617) 248-5000
                                        rkole@choate.com
                                        ctrusty@choate.com

                                        *Counsel for Plaintiffs and Counter De-*
                                        *fendants Liberty Mutual Fire Insurance*
                                        *Company and Liberty Insurance Corpo-*
                                        *ration*

## <u>L.R. 11-6.2 Certificate of Compliance</u>

The undersigned, counsel of record for Plaintiffs and Counter Defendants Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation, certify that this brief contains 6,169 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 9, 2026                    Respectfully submitted,


<u>/s/ Lawrence A. Tabb</u>
 Lawrence A. Tabb
 *l.tabb@musickpeeler.com*
 Danica Lam
 *d.lam@musickpeeler.com*
 333 South Hope Street
 Suite 2900
 Los Angeles, CA 90071
 Telephone: 213.629.7797


– and –


CHOATE, HALL & STEWART LLP
Robert Kole *(pro hac vice)*
Caroline Trusty *(pro hac vice)*
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
rkole@choate.com
ctrusty@choate.com

*Attorneys for Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation*

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE