REYNOLD L. SIEMENS (SBN 177956)
rsiemens@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

HAKEEM S. RIZK (SBN 326438)
hrizk@cov.com
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

*Attorneys for Defendant LX Hausys America, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE CORPORATION,<br><br>Plaintiffs<br><br>v.<br><br>LX HAUSYS AMERICA, INC. (formerly known as LG Hausys America, Inc.),<br><br>Defendant. | Case No. 2:25-CV-07207-CAS-KSx<br><br>**DEFENDANT AND COUNTERCLAIMANT LX HAUSYS AMERICA, INC.'S NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS UNTIL UNDERLYING ACTIONS CONCLUDE**<br><br>Hearing Date: July 6, 2026<br>Time:           10:00 a.m.<br><br><br>Action Filed:  August 5, 2025 |

---

MOTION AND MEMORANDUM ISO MOTION TO STAY PROCEEDINGS UNTIL UNDERLYING ACTIONS CONCLUDE; Case No. 2:25-CV-07207-CAS-KSx

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND ................................................... 3

      A.      LX Hausys Purchased Broad Commercial General Liability
           Coverage..................................................................................................... 3

      B.      LX Hausys Has Been Sued In Hundreds Of Cases Alleging
           Injury. ...................................................................................................... 4

      C.      Liberty Seeks Declarations That The Bodily Injury Lawsuits
           Allege "Non-Accidental" Injury Caused By "Silica," "Silica-
           Related Dust," Or "Pollutants."............................................................. 6

III.    ARGUMENT.................................................................................................. 8

      A.      A *Montrose I* Stay Is An Issue Of Substantive State Law................... 8

      B.      A Stay Of Overlapping Litigation, Including But Not Limited
           To Discovery, In Insurance Coverage Proceedings Is
           "Mandatory" Under California Law. ...................................................... 9

      C.      This Case Must Be Stayed Because Liberty's Coverage
           Defenses Turn On The Same Questions As The Bodily Injury
           Lawsuits.................................................................................................. 11

      D.      LX Hausys Would Suffer Prejudice Absent A Stay. ......................... 13

      E.      The Issue of Liberty's Duty to Defend Should Proceed. ................... 15

      F.      The *Landis* Factors Similarly Weigh In Favor Of A Stay. ............... 17

IV.     CONCLUSION.............................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*AIG Prop. Cas. Co. v. Cosby*,
  2016 WL 6662733 (C.D. Cal. July 15, 2016).......................................................9

*Atain Specialty Ins. Co. v. 20 Parkridge, LLC*,
  2015 WL 2226356 (N.D. Cal. May 11, 2015)............................................2, 9, 14

*Buss v. Super. Ct.*,
  16 Cal.4th 35 (1997) .............................................................................................4

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ..............................................................................17

*First Nat'l Ins. Co. of Am., v. Ayala*,
  2020 WL 376578 (N.D. Cal. Jan. 23, 2020)........................................................18

*Gasperini v. Ctr. for Humanities, Inc.*,
  518 U.S. 415 (1996)...........................................................................................8, 9

*Genesis Ins. Co. v. Univ. of S. Cal.*,
  2012 WL 13009003 (C.D. Cal. Mar. 28, 2012)...................................................14

*Great Am. Ins. Co. v. Super. Ct.*,
  178 Cal.App.4th 221 (2009) ..........................................................................1, 10

*Haskel, Inc. v. Super. Ct.*,
  33 Cal.App.4th 963 (1995) ..............................................................2, 10, 14, 16

*Ironshore Specialty Ins. Co. v. 23andMe, Inc.*,
  2015 WL 2265900 (N.D. Cal. May 14, 2015).................................................2, 11

*Landis v. North American Co.*,
  299 U.S. 248 (1936)...............................................................................................2

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ..............................................................2, 17, 18

*Montrose Chem. Corp. v. Super. Ct. (Montrose I)*,
  6 Cal.4th 287 (1993) ......................................... 1, 2, 3, 8, 9, 10, 14, 15, 16, 17

ii

*Montrose Chem. Corp. v. Super. Ct. (Montrose II)*,
  25 Cal.App.4th 902 (1994) ........................................... 2, 8, 10, 11, 12, 13, 14, 15

*MS Amlin Corp. Member, Ltd. v. Bottini*,
  2020 WL 5966612 (S.D. Cal. Oct. 8, 2020)........................................17, 18, 19

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Rudolph & Sletten, Inc.*,
  2020 WL 4039370 (N.D. Cal. July 17, 2020) ................................................17, 18

*U.S. ex. rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
  190 F.3d 963 (9th Cir. 1999) ...................................................................................9

*Phila. Indem. Ins. Co. v. Skating Edge, Inc.*,
  2018 WL 5099705 (C.D. Cal. May 24, 2018)...........................................................9

*Riddell, Inc. v. Superior Court*,
  14 Cal.App.5th 755 (2017) .............................................. 1, 9, 10, 11, 13, 14, 15

*RLI Ins. Co. v. ACE Am. Ins. Co.*,
  2020 WL 1322955 (N.D. Cal. Mar. 20, 2020) .......................................................18

*Samsung Fire & Marine Ins. Co. v. AFR Apparel Int'l, Inc.*,
  2015 WL 5005773 (C.D. Cal. Aug. 21, 2015) .........................................................9

*Scottsdale Ins. Co. v. MV Transp.*,
  36 Cal.4th 643 (2005) ...........................................................................................10

*Sentry Select Ins. Co. v. Quaid Harley Davidson, Inc.*,
  2022 WL 1681695 (C.D. Cal. Jan. 18, 2022)...................................................18, 19

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...................................................................................8

*Stonington Ins. Co. v. Adams*,
  2017 WL 3009206 (E.D. Cal. July 14, 2017).........................................................10

*Tokio Marine Specialty Ins. Co. v. City of Laguna Beach*,
  2017 WL 6512226 (C.D. Cal. Dec. 18, 2017).........................................................11

*Travelers Indem. Co. of Ill. v. Ins. Co. of N. Am.*,
  886 F.Supp. 1520 (S.D. Cal. 1995).........................................................................16

*Travelers Prop. Cas. Co. of Am., v. Salesforce.com*,
  2021 WL 1376575 (N.D. Cal. Apr. 13, 2021).........................................................11

*U.S. Fidelity & Guar. Co. v. Lee Invs. LLC*,
    641 F.3d 1126 (9th Cir. 2011) ...............................................................................9

*United Specialty Ins. Co. v. Bani Auto Grp., Inc.*,
    2018 WL 5291992 (N.D. Cal. Oct. 23, 2018) .....................................................17

*Zurich Am. Ins. Co. v. Omnicell, Inc.*,
    2019 WL 570760 (N.D. Cal. Feb. 12, 2019) .....................................2, 17, 18, 19

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 6, 2026, at 10:00 a.m., before the Honorable Christina A. Snyder, United States District Court for the Central District of California, First Street, Los Angeles, California, Defendant and Counter-Plaintiff LX Hausys America, Inc. ("LX Hausys") will, and hereby does, move the Court for a stay of all proceedings in this insurance coverage action as required by *Montrose Chemical Corporation of California v. Superior Court*, 6 Cal.4th 287 (1993) and *Riddell, Inc. v. Superior Court*, 14 Cal.App.5th 755 (2017), except for the issue of Liberty's duty to defend, until the underlying Bodily Injury Lawsuits against LX Hausys have concluded.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the declaration of Hakeem S. Rizk, the Request for Judicial Notice, and all other papers or pleadings in this action, evidence and argument that the parties may present before or at the hearing on this matter, and any other matters of which this Court may take judicial notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

It has long been the rule under California law that a liability insurer cannot proceed with an insurance coverage action against its own insured as long as the coverage claims overlap with facts that an underlying plaintiff is seeking to prove in a third-party liability lawsuit against the insured. In that situation, California law provides that proceedings in the insurance coverage action **"*must*"** be stayed until the underlying liability action against the insured is over. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 301 (1993) ("*Montrose I*"); *Riddell, Inc. v. Super. Ct.*, 14 Cal.App.5th 755, 765 (2017) (emphasis in original) (citing *Great Am. Ins. Co. v. Super. Ct.*, 178 Cal.App.4th 221, 235 (2009)). Such a stay is "mandatory, not discretionary." *Riddell, Inc.*, 14 Cal.App.5th at 771. A stay in this situation is necessary in order to avoid prejudice to the policyholder that would "undercut[] one of the primary reasons for purchasing liability insurance,"

namely, protection of the insured against the cost and consequences of underlying litigation, *Haskel, Inc. v. Super. Ct.*, 33 Cal.App.4th 963, 979 (1995), and to avoid the substantial prejudice to the policyholder of being "compelled to fight a two-front war, doing battle [in the underlying] litigation while at the same time devoting its money and [other] resources to litigating coverage issues with its carrier[]" on overlapping issues. *Montrose Chem. Corp. v. Super. Ct.*, 25 Cal.App.4th 902, 910 (1994) ("*Montrose II*").

This rule applies in federal court. *See* Section III.A *infra*. Federal courts in California apply California law "to determine whether a stay is appropriate" in situations like this. *Atain Specialty Ins. Co. v. 20 Parkridge, LLC*, 2015 WL 2226356, at *5 (N.D. Cal. May 11, 2015) (imposing stay under *Montrose I* due to factual overlap between coverage action and underlying action and additional *Montrose I* factors); *see also Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2015 WL 2265900, at *2 (N.D. Cal. May 14, 2015).

Other federal courts have concluded that a stay is also required as a procedural matter pursuant to *Landis v. North American Co.*, 299 U.S. 248 (1936). The outcome under that analysis is no different: *Landis* requires a court to weigh three "competing interests," including the possible prejudice from proceeding without a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir. 2005). In insurance coverage cases, that factor necessarily incorporates the *Montrose* analysis. *Zurich Am. Ins. Co. v. Omnicell, Inc.*, 2019 WL 570760, at *3–*4 (N.D. Cal. Feb. 12, 2019).

This lawsuit is exactly the kind of case that "must" be stayed until the underlying liability actions against the insured are over. Plaintiffs and Counter-Defendants Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty") have sued their insured, LX Hausys, seeking a ruling that they have no duty to defend or indemnify LX Hausys against the Bodily Injury Lawsuits. Liberty contends (or may contend) that there is no coverage because LX Hausys acted willfully or intentionally and expected or intended the underlying plaintiffs' alleged injuries. Liberty also contends that the underlying plaintiffs' alleged injuries were caused by "silica,"

2

"silica-related dust," and other substances that qualify as "pollutants," and therefore are subject to exclusions in the Policies.  These allegations regarding the causes of the underlying plaintiffs' injuries are disputed in the underlying Bodily Injury Lawsuits for which LX Hausys seeks defense and indemnity coverage from Liberty, and Liberty's contentions are the same as or overlap with those raised by the underlying plaintiffs. Those issues have not been adjudicated in the Bodily Injury Lawsuits, most of which are still in the discovery stage, and likely will not be adjudicated for some time.

In short, to establish its case, Liberty seeks findings on the merits of its coverage defenses that are identical to or overlap with the findings that the underlying plaintiffs seek to prove in their liability lawsuits against LX Hausys, Liberty's insured.  Because Liberty seeks to avoid coverage by proving the same facts against LX Hausys as the underlying plaintiffs also seek to prove against LX Hausys, this lawsuit presents what the California Supreme Court has described as the "classic situation" in which the insurer's coverage action must be stayed because of the "obvious" potential for prejudice it presents to the insured's defense of the underlying cases.  *See Montrose I*, 6 Cal.4th at 302.  The Court should therefore stay all the issues in this case, except for the issue of Liberty's duty to defend, until the Bodily Injury Lawsuits are resolved.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    LX Hausys Purchased Broad Commercial General Liability Coverage.

To protect itself against claims for liability to third parties because of bodily injury and property damage, LX Hausys paid millions of dollars to purchase commercial general liability insurance from Liberty for periods between August 1, 2009 and August 1, 2017 (the "Policies").  *See* Countercl. (ECF 23) ¶ 29; *see also* Compl. (ECF 1), Exs. A–J (ECF 1-1–1-11).

The Policies obligate Liberty to pay on behalf of or indemnify LX Hausys for all sums that LX Hausys becomes legally obligated to pay as "damages" because of "bodily injury" that occurs during the policy period, caused by an "occurrence," subject to retentions or deductibles (if any) and policy limits.  *See* Countercl. ¶ 32; *see also* Compl.,

Exs. A–J.  The Policies typically define "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Countercl. ¶ 34; *see also* Compl., Ex. A, Section V.13 (Definition of "Occurrence") at PDF page 63.  The Policies also typically define "bodily injury" to mean "bodily injury, mental anguish, mental injury, shock, fright, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time."  Countercl. ¶ 35; *see also* Compl., Ex. A, Section V.3 (Definition of "Bodily Injury") at PDF page 62.

The Policies contain an exclusion—the precise language of which differs from policy to policy—generally removing coverage for "'bodily injury' arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust.'"  Countercl. ¶ 36; *see also e.g.*, Compl., Ex. A, "Silica Exclusion" Endorsement at PDF page 12.  The Policies additionally contain an exclusion removing coverage for "'bodily injury' … which would not have occurred in whole or in part but for the actual, alleged or threated discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  Countercl. ¶ 42; *see also, e.g.*, Compl., Ex. A, "Total Pollution Exclusion with Hostile Fire Exception" Endorsement at PDF page 39.

The Policies also provide that Liberty has the duty to defend LX Hausys and to pay LX Hausys' defense fees and costs for any suits seeking damages that are at least potentially covered by the Policies, even if the allegations of the claims or lawsuits are groundless, false, or fraudulent, subject to retentions or deductibles (if any).  *See* Countercl. ¶ 32; *see also* Compl., Ex. A, Section 1.1(a) (Insuring Agreement) at PDF page 30.  Under California law, Liberty's duty to defend LX Hausys therefore includes the obligation to defend LX Hausys against all lawsuits that seek any potentially covered damages, even suits that also contain claims that are not covered.  *See Buss v. Super. Ct.*, 16 Cal.4th 35, 49 (1997) ("To defend meaningfully, the insurer must defend immediately….[and] entirely.").

**B.      LX Hausys Has Been Sued In Hundreds Of Cases Alleging Injury.**

LX Hausys is a manufacturer and distributor of certain solid surface materials,

4

including stone products such as countertops. *See* Answer (ECF 23) ¶ 1.

Beginning in 2022, LX Hausys became the target of numerous lawsuits brought by third parties alleging bodily injuries caused by exposure to harmful substances in their workplaces while fabricating and installing stone products manufactured and sold by LX Hausys for use in homes and businesses (as identified above, the "Bodily Injury Lawsuits"). *See id.* ¶ 2. Most of the Bodily Injury Lawsuits were filed and are pending in state courts in California, *see id.* ¶ 26, and generally all of the Bodily Injury Lawsuits name as defendants LX Hausys and a multitude of other parties, including other manufacturers of surface and stone products, *see* Countercl. ¶ 19.

The Bodily Injury Lawsuits generally allege, among other things, that LX Hausys is liable for bodily injuries allegedly caused by alleged exposure to harmful substances allegedly present in stone products allegedly manufactured by LX Hausys. *See id.* ¶¶ 19–25. Specifically, and only by way of illustration, the Bodily Injury Lawsuits allege bodily injury from LX Hausys' HIMACS products, which do not contain silica. *See id.* ¶ 23. The Bodily Injury Lawsuits also allege lung damage, among other injuries, caused by alleged exposure to silica, metals and/or volatile organic compounds in stone products while working at fabrication workshops and localized areas such as individual kitchens and bathrooms. *See id.* ¶ 20. The specific dates of the alleged injuries vary according to the individual circumstances of the allegedly injured workers, but most if not all of the underlying plaintiffs allege bodily injury suffered during Liberty's policy periods (*i.e.*, August 1, 2009 to August 1, 2017). *See id.* ¶ 24.

As noted above, most of the Bodily Injury Lawsuits are still in the discovery stage of litigation. For instance, in December 2025, the lawsuits filed in California were assigned to one judge for coordinated proceedings until trials in those cases are assigned. *See* Request for Judicial Notice ("RJN"), Ex. A (July 18, 2025 Minute Order Re Coordinated Proceedings). Several of those cases have been set for trial between June and December 2026. *See* RJN, Exs. B (Plaintiffs' January 21, 2026 Notice of Rulings Made by the Court on January 20, 2026, Case No. 21STCV06984), C (Notice of Entry of

5

Joint Trial Setting Case Management Order, Case No. 23STCV00260), D (Notice of Entry of Joint Trial Setting Case Management Order, Case No. 23STCV06568), E (Notice of Entry of Joint Trial Setting Case Management Order, Case No. 23STCV31679).  The parties in the remaining cases have proceeded with propounding and responding to discovery requests; trials in those matters have not been calendared. The same is true with respect to those cases filed outside of California.

To date, LX Hausys has incurred significant defense fees and costs, well in excess of any of the retentions or deductibles in the Policies, in defending the Bodily Injury Lawsuits.  *See* Countercl. ¶ 26.  Liberty has not paid any of those costs.  *See* Answer (ECF 23) ¶¶ 57–70.  LX Hausys anticipates that it will continue to incur substantial defense expenses in connection with the Bodily Injury Lawsuits, likely including for future, additional lawsuits making allegations similar or identical to the existing Bodily Injury Lawsuits.  *Id.*

**C.  Liberty Seeks Declarations That The Bodily Injury Lawsuits Allege "Non-Accidental" Injury Caused By "Silica," "Silica-Related Dust," Or "Pollutants."**

After LX Hausys timely noticed Liberty of the Bodily Injury Lawsuits, on November 8, 2024, Liberty denied "coverage for the Lawsuits" based on the Policies' silica and pollution exclusions and informed LX Hausys that it "will not participate in the defense of LX [Hausys] or pay any settlements or judgments related to the [Bodily Injury] Lawsuits."  Countercl. ¶ 59; *see also* Rizk Decl., Ex. A (Liberty's Initial Denial of Coverage) at 1.  Despite that coverage denial, seven days later, Liberty wrote to LX Hausys' counsel via email dated November 15, 2024, stating that Liberty "will review the complaints for potential coverage under the policies issued to LG Hausys and advise of our coverage position."  Rizk Decl., Ex. B (Christina O'Brien's Nov. 15, 2024 Email to Robyn Scancich).  While Liberty was evaluating coverage, LX Hausys tendered to Liberty additional Bodily Injury Lawsuits for which LX Hausys sought coverage under the Policies.  *Id.*, Ex. C (Eric Little's Mar. 4, 2025 Ltr. to Ethan Pressly).  In March 2025,

6

Liberty wrote to counsel for LX Hausys, confirming its denial of coverage for the Bodily Injury Lawsuits, refusing to "participate in the defense of LX [Hausys] or pay any settlements or judgments related to the [Bodily Injury] Lawsuits." *Id.*, Ex. D (Liberty's Supplemental Denial of Coverage) at 1.

Thereafter, in June 2025, counsel for LX Hausys wrote to Liberty, demanding that Liberty reconsider its "erroneous" denials of coverage for the Bodily Injury Lawsuits in light of well-settled California insurance law. *Id.*, Ex. E (Mr. Little's June 19, 2025 Ltr. to Mr. Pressly) at 2. But, on August 5, 2025, Liberty simultaneously sent LX Hausys a letter maintaining its denial of coverage for the Bodily Injury Lawsuits and a separate letter from its counsel notifying counsel for LX Hausys that Liberty has initiated this declaratory judgment action against LX Hausys. *Id.*, Ex. F (Robert Kole's Aug. 5, 2025 Ltr. to Mr. Little) at 2.

By this action, Liberty seeks a declaration that it is not obligated to defend or indemnify LX Hausys against the Bodily Injury Lawsuits under its Policies. Liberty asserts several purported defenses to coverage for the Bodily Injury Lawsuits, including that: (1) the alleged injuries do not arise from an "occurrence" or accident, but instead solely from LX Hausys' intentional conduct; (2) LX Hausys expected or intended the underlying plaintiffs' alleged injuries; (3) the Policies' Silica Exclusion precludes all potential for coverage for the Bodily Injury Lawsuits because those lawsuits primarily allege injury caused by exposure to "silica" or "silica-related dust"; and (4) the Policies' Pollution Exclusion bars coverage for bodily injury caused by "pollutants," as purportedly alleged in the Bodily Injury Lawsuits. *See* Compl. ¶¶ 4–7, 25, 27, 31.

Each of these coverage defenses raises factual issues that are also being litigated in the underlying Bodily Injury Lawsuits. The underlying plaintiffs seek to establish that their alleged bodily injuries arise from LX Hausys' negligence, while Liberty seeks to prove that the plaintiffs' alleged injuries arise solely from LX Hausys' intentional conduct, and LX Hausys contends that it is not liable at all. The underlying plaintiffs seek to prove that their alleged injuries were caused by exposure to a host of harmful

7

substances, including but not limited to silica, while Liberty seeks to prove that the plaintiffs' alleged injuries were caused by "silica," "silica-related dust," or pollutants, and LX Hausys contends it is not liable at all.  Consequently, Liberty's coverage defenses precisely overlap with factual issues to be resolved in the Bodily Injury Lawsuits.

## III.   ARGUMENT

Liberty concedes that California law applies to this action.  *See generally* ECF 31-14 (relying on California law for its dispositive motion).  As Section III.A explains, the imposition of a stay under *Montrose I* is a substantive issue governed by California law. But even if the Court concludes that a stay is a procedural matter to which federal law applies, the result would be the same, as discussed in Section III.E, *infra*.  For either or both reasons, the Court should stay all the issues in this case, except for the issue concerning Liberty's duty to provide a complete defense, until the Bodily Injury Lawsuits conclude.

### A.   A *Montrose I* Stay Is An Issue Of Substantive State Law.

Federal courts "exercising diversity jurisdiction must follow state substantive law and federal procedural law when adjudicating state law claims," including claims for declaratory relief.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020). Whether an issue is substantive or procedural depends on the "'outcome-determination test,' which asks whether applying federal law instead of state law would 'significantly affect' the litigation's outcome."  *Id.* (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

Here, the relevant state law is substantive: if the factually overlapping coverage action is not stayed mandatorily, as *Montrose* compels, then this case and the underlying litigations would proceed simultaneously, creating a risk of factual determinations in the coverage action that would prejudice LX Hausys' defense of the Bodily Injury Lawsuits. *See Montrose I*, 6 Cal.4th at 301.  This potential prejudice would undermine LX Hausys' substantive right to defend itself against the underlying cases until Liberty's coverage obligations "can be determined *without* prejudice to the insured."  *Montrose II*, 25

8

Cal.App.4th at 909 (emphasis added).  The requirement of the mandatory stay therefore "is manifestly substantive," even if its effect is procedural.  *Gasperini*, 518 U.S. at 429; *cf. U.S. ex. rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (provisions of California anti-SLAPP statute concerning special motion to strike procedures apply in federal court given "important, substantive state interests furthered by the" statute).

For these reasons, federal courts considering similar requests for stays in overlapping declaratory relief actions brought by insurers have applied California law and the *Montrose* line of cases "in order to determine whether a stay is appropriate."  *20 Parkridge, LLC*, 2015 WL 2226356, at *5 (footnote omitted) (citing *U.S. Fidelity & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1133–34 (9th Cir. 2011)).[1]  This Court should do so as well.

### B. A Stay Of Overlapping Litigation, Including But Not Limited To Discovery, In Insurance Coverage Proceedings Is "Mandatory" Under California Law.

As noted above, California law has long recognized that proceedings in an insurance coverage case can prejudice a policyholder's defense against ongoing underlying liability lawsuits when the disputed insurance coverage issues may, or do, overlap with facts being litigated in the underlying action.  *See, e.g.*, *Montrose I*, 6 Cal.4th at 301–02; *Riddell*, 14 Cal.App.5th at 765 ("Litigation of the declaratory relief action when the underlying action is pending may, however, create a risk of prejudice to the insured.").

To avoid such prejudice, it is a basic rule of California insurance law that a liability "insurer cannot, over the insured's objection, use a declaratory relief action as a forum to

---

[1] Other federal cases applying California law to the "stay" issue include: *Phila. Indem. Ins. Co. v. Skating Edge, Inc.*, 2018 WL 5099705, at *2 (C.D. Cal. May 24, 2018); *AIG Prop. Cas. Co. v. Cosby*, 2016 WL 6662733, at *2 (C.D. Cal. July 15, 2016); *Samsung Fire & Marine Ins. Co. v. AFR Apparel Int'l, Inc.*, 2015 WL 5005773, at *2 (C.D. Cal. Aug. 21, 2015).

9

litigate factual issues affecting the insured's liability in the underlying action. Rather, such issues must be litigated in the underlying action." *Riddell*, 14 Cal.App.5th at 767. To prevent an insurer from effectively "join[ing] forces with the plaintiffs in the underlying action[] as a means to defeat coverage," California law provides that a court "*must* stay" an insurer's "declaratory relief action" when the "factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation." *Great Am. Ins. Co.*, 178 Cal.App.4th at 235–36 (emphasis in original) (quoting *Montrose II*, 25 Cal.App.4th at 909–10); *see also Montrose I*, 6 Cal.4th at 301 ("[A] stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action").

California's stay rule is not limited to factual findings, which present an obvious risk of prejudice to the insured. A stay is also mandatory when discovery or other proceedings in the declaratory relief action are "*logically related* to issues affecting the insured's liability in the underlying action." *Riddell*, 14 Cal.App.5th at 766 (emphasis in original; brackets omitted) (quoting *Haskel*, 33 Cal.App.4th at 980). When there is such a factual overlap, a stay is required even without "a separate finding of prejudice" to the insured. *Id.* at 770. Otherwise, instead of helping its insured to defend against the underlying plaintiff's claims, as promised in its insurance contract, the insurer would effectively "join forces with the plaintiffs in the underlying action[]" by propounding discovery against its own insured to attempt to prove adverse facts helpful to the underlying liability plaintiffs. *Montrose II*, 25 Cal.App.4th at 910. It is "*only* where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain . . . resolution of its claim that coverage does not exist." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 662 (2005) (emphasis in original; citation omitted) (quoting *Haskel*, 33 Cal.App.4th at 979); *see also Stonington Ins. Co. v. Adams*, 2017 WL 3009206, at *4 (E.D. Cal. July 14, 2017) ("[I]t is only when there is *no* overlap of issues that the Court has discretion to not order a stay." (emphasis added)).

Consistent with this established rule, courts routinely stay insurance coverage proceedings when the insurer seeks to adjudicate against the insured coverage defenses that overlap with factual issues in the underlying litigation. *See, e.g.*, *Riddell*, 14 Cal.App.5th at 767 (insurers could not obtain discovery in insurance coverage action about "extent and timing" of insured's "knowledge" of the "risks" of playing football wearing helmets at issue because those are "facts at issue in the third party actions"); *Montrose II*, 25 Cal.App.4th at 909–10 (factual findings in the insurance coverage action may "collaterally estop [the insured] from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage"); *Travelers Prop. Cas. Co. of Am., v. Salesforce.com*, 2021 WL 1376575, at *1 (N.D. Cal. Apr. 13, 2021) (insured "would be entitled to a stay of [insurer's] indemnification claim because the factual question of whether [insured] acted negligently, which is conduct covered under the insurance policy, or intentionally and knowingly, which is conduct not covered under the insurance policy, is at the heart of both this lawsuit and the Texas state court litigation"); *23andMe, Inc.*, 2015 WL 2265900, at *4 (staying action because insurer's attempt to prove that damages sought by plaintiff in underlying action were "ill-gotten or wrongfully acquired would be precisely the type of adjudication prohibited by *Montrose II*"); *Tokio Marine Specialty Ins. Co. v. City of Laguna Beach*, 2017 WL 6512226, at *5-6 (C.D. Cal. Dec. 18, 2017) ("[S]tay is mandatory" because "some of the factual issues to be resolved in the Underlying Action could affect the factual issues that must be resolved by this Court").

### C. This Case Must Be Stayed Because Liberty's Coverage Defenses Turn On The Same Questions As The Bodily Injury Lawsuits.

This case presents the quintessential example of when coverage litigation must be stayed until the underlying litigation against the insured has concluded. The declarations that Liberty seeks in this insurance coverage action practically raise the full gamut of issues that the underlying plaintiffs raise in their complaints. As discussed above, Liberty claims that it owes LX Hausys no coverage obligations because, among other reasons: (1)

11

LX Hausys' conduct was intentional; (2) LX Hausys knew about the underlying plaintiffs' alleged injuries prior to the Policies' respective policy periods such that the Bodily Injury Lawsuits do not fall within the scope of the coverage afforded by the Policies; and (3) the Polices' exclusions for "Silica" and "Pollution" preclude all potential for coverage for the Bodily Injury Lawsuits.  Compl. ¶¶ 4–6, 25, 27, 31.

Despite Liberty's contentions that intentional conduct is at issue in the Bodily Injury Lawsuits, the underlying complaints alternatively allege LX Hausys acted merely negligently by, among other things: (i) carelessly manufacturing and distributing products to which the underlying plaintiffs were exposed in their work fabricating and installing countertops; (ii) failing to provide adequate warnings about the risks of using LX Hausys' products, and (iii) failing to adequately instruct on how to use the products in manners to prevent bodily injuries.  *See, e.g.*, ECF 33-1 (*Quiroz* Compl.) ¶¶ 1283–87; *see also id.* ¶ 1308 ("As a direct and proximate result of Defendants' negligence as alleged herein, Plaintiff … suffers from silicosis and related injuries.").  Liberty therefore seeks to prove that despite the underlying plaintiffs' clear allegations of negligence, the alleged injuries in the Bodily Injury Lawsuits arise solely from LX Hausys' intentional conduct. This is "the classic situation" requiring a stay: "when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct."  *Montrose II*, 25 Cal.App.4th at 907.

Liberty invokes other coverage defenses for claims in the Bodily Injury Lawsuits that also overlap factually with disputed questions the underlying plaintiffs are seeking to adjudicate.  For example, Liberty claims that all the underlying plaintiffs' alleged injuries were caused at least in part by "silica" or "silica-related dust."  *See* Compl. ¶¶ 4, 27, 31. But the underlying plaintiffs allege bodily injuries caused by independent exposure to LX Hausys' HIMACS products, which do not contain silica, as well as VOCs, gases, metals, mists, fumes, and other non-excluded substances, while LX Hausys disputes liability altogether.  *See* Countercl. ¶¶ 19–23.  Thus, the plaintiffs' alleged discrete bodily injuries,

12

and specifically what caused each of them, are fact intensive inquiries that still need to be resolved in the underlying actions.

Moreover, by trying to advance this coverage case now, Liberty is improperly attempting to force LX Hausys into making a choice between (a) admitting liability to the underlying plaintiffs and (b) losing coverage.  For example, if LX Hausys counters Liberty's silica argument by arguing the plaintiffs' injuries were caused by other exposures not excluded under the Policies, it would be forced to prove its own liability in the underlying cases; and if LX Hausys proves in the coverage action that it is not liable at all, it could lose the indemnity coverage it might need in case of a subsequent inconsistent determination in the underlying cases.  *See Riddell*, 14 Cal.App.5th at 765 ("[I]f the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court must stay the declaratory relief action.").

In short, Liberty's coverage action seeks to adjudicate disputed factual questions against its insured, LX Hausys, despite the fact that those same factual questions are contested, and not yet resolved, in the Bodily Injury Lawsuits.  The factual questions in the Bodily Injury Lawsuits and the coverage action thus overlap, making a stay of this action mandatory.  *See id.*

**D.    LX Hausys Would Suffer Prejudice Absent A Stay.**

A stay is "mandatory" under California law even without a separate finding of prejudice.  *Id.* at 770–71.  But were the Court to undertake a prejudice analysis, it would find that LX Hausys would face substantial prejudice if Liberty's coverage action were permitted to proceed.  Courts have identified several ways in which a policyholder can be prejudiced by proceeding with overlapping coverage litigation while defending itself against overlapping underlying liability lawsuits.  Each applies here.

*First*, Liberty effectively seeks to "join forces with the plaintiffs in the underlying actions as a means to defeat coverage." *Montrose II*, 25 Cal.App.4th at 909–10.  By seeking to prove the same factual allegations in this case regarding LX Hausys' alleged

13

intent and knowledge, Liberty, which "is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit." *Haskel*, 33 Cal.App.4th at 979; *see also Genesis Ins. Co. v. Univ. of S. Cal.*, 2012 WL 13009003, at *2 (C.D. Cal. Mar. 28, 2012) (stay granted where disputed coverage issues meant that insurer's "interests [were aligned] with those of [underlying plaintiffs'] on this issue rather than with [the] insured . . . . This is the kind of alignment of insurer and insured's foes, creating a 'two front war,' that *Montrose* and its progeny are concerned with."). Liberty should not be permitted to make arguments that undermine LX Hausys' defenses to pending, underlying Bodily Injury Lawsuits.

*Second,* LX Hausys would suffer prejudice by being forced to "fight a two-front war, litigating not only with the underlying claimant[s], but also expending precious resources fighting an insurer over coverage questions." *Haskel*, 33 Cal.App.4th at 979; *see also Montrose II*, 25 Cal.App.4th at 910 (describing the "prejudice" that "occurs when the insured is compelled to fight a two-front war" against the underlying plaintiffs and its insurers on overlapping issues in separate but parallel litigations); *20 Parkridge, LLC*, 2015 WL 2226356, at *10 (insureds "should not have to fight both in this action and the Underlying Action, expending significant resources"). LX Hausys is already expending significant resources to defend against the hundreds of Bodily Injury Lawsuits. It should not have to fight its own insurer now.

*Third*, if Liberty were permitted to litigate against its insured and were to succeed in obtaining adverse findings on factual issues overlapping with those raised in the underlying Bodily Injury Lawsuits, LX Hausys "may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage." *Riddell*, 14 Cal.App.5th at 765. The "potential that the insurer's proof will prejudice its insured in the underlying litigation" in such a situation is "obvious." *Montrose I*, 6 Cal.4th at 302. But to spotlight this prejudice, counsel for approximately 500 of the underlying plaintiffs

has publicly identified multiple potential causes of injury—including "nano size" particles, "metals," and "resins"—that go beyond simple silica exposure. Stone Update, *ISFA Proposes Training, Licensing for Calif. Fabricators*, *available at* https://stoneupdate.com/isfa-proposes-training-licensing-for-calif-fabricators/ (last visited May 20, 2026). If Liberty is permitted to litigate the applicability of the Policies' Silica Exclusion or Pollution Exclusion now, it would force LX Hausys to litigate the complex issues of what caused the underlying plaintiffs' injuries prematurely, potentially creating adverse findings that LX Hausys may be collaterally estopped from relitigating in the Bodily Injury Lawsuits.[2]

For all these reasons, all the issues in this coverage litigation, except for the issue of Liberty's duty to defend, must be stayed until the underlying Bodily Injury Lawsuits conclude to avoid serious prejudice to LX Hausys.

### E. The Issue of Liberty's Duty to Defend Should Proceed.

Although the Court "must" stay the indemnity coverage proceedings that overlap with issues being litigated in the Bodily Injury Lawsuits, the Court can and should leave open for resolution the issue of Liberty's duty to defend because a ruling on that issue does not depend on resolving any facts that are at issue in the Bodily Injury Lawsuits.

It is well settled that "whether a liability insurer owes a duty to defend its insured in an action against [the insured] usually is made in the first instance by comparing the

---

[2] Because "there are overlapping factual disputes, [] a stay is mandatory," and the Court need not consider the prejudice to Liberty. *Riddell*, 14 Cal.App.5th at 771. But to the extent the Court does, the prejudice to Liberty, by contrast, is minimal, if any. While California courts have acknowledged that insurers like Liberty bear the burden of "pay[ing defense costs] until the underlying actions are resolved," they have made clear that such burden does not outweigh the substantial prejudice to the insured if the coverage action is not stayed. *Montrose II*, 25 Cal.App.4th at 910 ("In a case where there is [] potential conflict between the coverage issues and the issues in the third party action, … the carrier gets to keep paying and paying and paying."). In any event, to date, Liberty has not paid any of LX Hausys' defense costs, and as noted above, only recently agreed to mount a defense for LX Hausys subject to a reservation of rights.

15

allegations of the [underlying] complaint with the terms of the policy." *Montrose I*, 6 Cal.4th at 295; *see also Travelers Indem. Co. of Ill. v. Ins. Co. of N. Am.*, 886 F.Supp. 1520, 1525 (S.D. Cal. 1995) ("California law is clear that the duty to defend is measured at the outset of the litigation, not by hindsight."). That is because whether an insurer has a duty defend, and whether it has complied fully with that obligation, depends only on whether any of the allegations made in the underlying liability lawsuits are potentially covered, and not on any adjudication of what those facts actually are. *See Montrose I*, 6 Cal.4th at 295 ("the existence of a duty to defend turns not upon the ultimate adjudication of coverage under [the] policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit."). "If the courts did not impose an immediate defense obligation upon a showing of a potential for coverage, thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit." *Haskel*, 33 Cal.App.4th at 979 n.14 (internal quotations omitted); *accord Montrose I*, 6 Cal.4th at 295 ("Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf.").

Here, prompt adjudication of this limited issue is imperative. Following the Court's denial of Liberty's motion for judgment on the pleadings, on May 5, 2026, Liberty for the first time informed LX Hausys that it "will agree to participate in Hausys's defense of the [Bodily Injury] Lawsuits for all complaints materially similar to the *Quiroz* complaint addressed in the *Liberty/Hausys* decision, subject to a reservation of rights." Rizk Decl., Ex. G (Mr. Kole's May 5, 2026 Ltr. to Mr. Little) at 2. However, Liberty has not explained what its defense will look like, and therefore, whether Liberty intends to fully comply with its duty to defend and provide LX Hausys with a full and complete defense as it is required to do remains unclear. Indeed, in agreeing to provide a defense, Liberty expressly conditioned its agreement on the outcome of forthcoming motions in this litigation, including its certification motion for interlocutory review.

Accordingly, because none of the issues contested in the underlying Bodily Injury

16

Lawsuits is relevant to the question of Liberty's duty to defend and because that issue is an issue that is properly determined at the outside of the litigation, LX Hausys is entitled to prompt adjudication of that issue.

### F. The *Landis* Factors Similarly Weigh In Favor Of A Stay.

Even if this motion were viewed as presenting a procedural question governed by federal law, a stay would be appropriate. Under *Landis*, the Court must consider three factors in deciding whether to stay litigation: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). The second *Landis* factor "incorporates the *Montrose*" analysis. *MS Amlin Corp. Member, Ltd. v. Bottini*, 2020 WL 5966612, at *4 (S.D. Cal. Oct. 8, 2020) (imposing a *Landis* stay due to the overlap in facts between coverage action and underlying action while citing to prejudice considerations from *Montrose I*); *see also United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018) ("California law can help inform the Court's application of the *Landis* factors"). All three factors weigh in favor of staying this coverage action until the Bodily Injury Lawsuits are resolved.

*First*, Liberty would suffer minimal harm, if any, if this action is stayed. Because Liberty has only recently agreed to defend the Bodily Injury Lawsuits, any prejudice it might claim from having to honor that obligation until the underlying cases are resolved is hypothetical. At most, a stay would postpone a coverage determination that may never affect Liberty, but this is not cognizable harm under *Landis*. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Rudolph & Sletten, Inc.*, 2020 WL 4039370, at *8 (N.D. Cal. July 17, 2020) ("[D]elaying a determination of whether an insurer owes an insured party coverage does not substantially harm the insurer") (internal quotation marks and citation omitted); *see also Zurich*, 2019 WL 570760, at *4 (granting a stay of the coverage action and

17

rejecting the argument that a stay would prejudice the insurer by forcing it to continue providing defense costs and delaying a potential no-coverage determination). Even if Liberty must continue defending LX Hausys in the Bodily Injury Lawsuits while this case is stayed, that defense obligation "does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Rudolph & Sletten*, 2020 WL 4039370, at *8 (internal quotation marks omitted) (quoting *Lockyer*, 398 F.3d at 1112); *cf. RLI Ins. Co. v. ACE Am. Ins. Co.*, 2020 WL 1322955, at *4 (N.D. Cal. Mar. 20, 2020) (stay of coverage litigation does not prejudice insurer because "advancing defense costs is part of an insurer's obligation and costs of doing business.").

*Second*, as detailed above, LX Hausys would suffer considerable hardship if this action proceeded without the requested stay. *See* Section III.D *supra*. Several courts have decided this factor based solely on the prejudice that results from "having to fight a 'two-front war,'" as LX Hausys would be forced to do. *Zurich*, 2019 WL 570760, at *6; *see also Rudolph & Sletten*, 2020 WL 4039370, at *8; *Sentry Select Ins. Co. v. Quaid Harley Davidson, Inc.*, 2022 WL 1681695, at *5 (C.D. Cal. Jan. 18, 2022). Moreover, because "key issues in this case overlap with key issues in the" Bodily Injury Lawsuits, any adverse factual findings in this case may well "impact the defense" in those lawsuits. *Bottini*, 2020 WL 5966612, at *6. As discussed above, the factors to be litigated in this coverage action—particularly Liberty's allegations of intentional conduct against its insured, LX Hausys, and that all of the underlying plaintiffs' injuries are purportedly caused by exposure to "silica," "silica-related dust," or "pollutants"—overlap with the facts that the underlying plaintiffs seek to prove in the Bodily Injury Lawsuits. *See* Section III.C *supra*.

*Third*, a stay would best serve the orderly course of justice. "The relevant inquiry for this factor is whether the Underlying Action and the coverage action factually and/or legally overlap." *First Nat'l Ins. Co. of Am., v. Ayala*, 2020 WL 376578, at *6 (N.D. Cal. Jan. 23, 2020). A stay is justified when, as here, "virtually all of the predicate facts bearing on Defendants' right to coverage . . . will be developed through discovery and

18

litigation" in the underlying lawsuit.  *Rudolph & Sletten*, 2020 WL 4039370, at *8; *see also Quaid Harley Davidson*, 2022 WL 1681695, at *5 ("The Court will necessarily have to delve into the facts of the claims in the Underlying Lawsuit," and such overlap "risks wasted efforts or, worse, inconsistent judgments."); *Bottini*, 2020 WL 5966612, at *8 (holding that a stay was appropriate because of "disputed factual issues that overlap with the [underlying] proceedings").  This Court "need not preside over parallel proceedings over largely overlapping issues"; instead, it should stay this case "to better manage its limited resources until" the Bodily Injury Lawsuits are resolved.  *Zurich*, 2019 WL 570760, at *6.  At that point, the predicate facts bearing on Liberty's coverage obligations will have been developed through discovery and litigation.

## IV.    CONCLUSION

For the foregoing reasons, LX Hausys respectfully requests that this Court grant its Motion and stay all proceedings at this stage in this litigation, other than that relating to the issue of Liberty's duty to defend, pending resolution of the Bodily Injury Lawsuits.

Dated:  May 21, 2026

Respectfully submitted,

COVINGTON & BURLING LLP

By:    /s/*Reynold L. Siemens*
          REYNOLD L. SIEMENS
          HAKEEM S. RIZK
          *Attorneys for Defendant LX Hausys America, Inc.*

19

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant and Counter-Plaintiff LX Hausys America, Inc., certifies that this brief contains 6,560 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 21, 2026                       Respectfully submitted,

                                            COVINGTON & BURLING LLP

                                            By:    /s/*Reynold L. Siemens*
                                                   REYNOLD L. SIEMENS
                                                   HAKEEM S. RIZK
                                                   *Attorneys for Defendant LX*
                                                   *Hausys America, Inc.*